UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT L. HEDRICK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15-cv-0648 (KBJ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Pro se plaintiff Robert L. Hedrick ("Hedrick") is currently incarcerated in Butner, North Carolina due to a conviction for distribution of child pornography (and other similar federal crimes) in the Southern District of Texas. In August of 2013, Hedrick submitted two FOIA requests to Defendant Federal Bureau of Investigation ("FBI"), seeking records relating to any investigation that the FBI had conducted in connection with his prosecution for the child pornography offenses, as well as records related to his contact with the FBI regarding an alleged smuggling conspiracy. (*See* Compl., ECF No. 1, at 2; *see also* FOIA Requests, Exs. A & B to Compl., ECF No. 1-1, at 2–6.)[1] In response to these FOIA requests, the FBI released to Hedrick a redacted two-page summary of an interview of him that two FBI agents purportedly conducted; the FBI maintained that the redactions related to personal identifying information that FOIA Exemptions 6 and 7(C) protect. In the instant five-count complaint, which was

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

initially filed on April 28, 2015, and supplemented on September 14, 2015, Hedrick challenges the adequacy of the FBI's response to his FOIA requests.

Before this Court at present is the FBI's motion for summary judgment. (Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 14.)[2] The FBI argues that it is entitled to summary judgment with respect to Hedrick's entire complaint because the agency conducted an adequate search for responsive documents and properly invoked FOIA Exemptions 6 and 7(C) to withhold portions of the two-page responsive document that it located. (*See* Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. 14-1, at 26–34; Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. 31, at 3–8.) In response, Hedrick expressly concedes any challenge to the redactions that the FBI made to the two-page document pursuant to Exemptions 6 and 7(C). (*See* Resp. to Mot. for Partial Summ. J. ("Pl.'s Opp'n"), ECF No. 27, at 8–9.) But Hedrick argues that, because the FBI did not search specific field offices in response to his request, it did not conduct an adequate search for records. Hedrick also asserts that the agency is intentionally suppressing additional responsive records related to an alleged smuggling conspiracy that was the subject of his interview with the FBI agents (*see id.* at 7–8), and he further insists that the document the FBI released to him is "false" and that an unknown person "planted" the document in the FBI's file (*id.* at 8). Hedrick asks this Court to order production of the entire file in which the two-page document was found and initiate criminal proceedings against those people who allegedly inserted this "false" document into the file. (*See id.* at 13, 17.)

---

[2] The FBI captioned its motion as one for "partial" summary judgment, but noted in its reply brief that the inclusion of the word "partial" was in error. (*See* Def.'s Reply at 1 n.1.)

On September 30, 2016, this Court issued an order **GRANTING** the FBI's motion for summary judgment.  (*See* Order, ECF No. 42.)  The instant Memorandum Opinion explains the Court's reasons for that Order.  In short, this Court finds that the FBI conducted an adequate search for records, and that Hedrick's contention that the FBI is hiding or has destroyed additional responsive records (*see* Pl's Opp'n at 5–6) is entirely speculative, and thus insufficient to overcome the presumption of good faith that attaches to the affidavit the FBI has submitted in support of its motion for summary judgment.

## I.   BACKGROUND

### A.   The FBI's Electronic Databases

The FBI utilizes a system known as the Central Records System ("CRS") to house agency records, including "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its . . . functions as a law enforcement, counterterrorism and intelligence agency[.]"  (Decl. of David M. Hardy ("Hardy Decl."), ECF No. 14-3, ¶ 18.)  The CRS "encompasses the records of FBI Headquarters ('FBIHQ'), FBI Field Offices, and FBI Legal Attaché Offices . . . worldwide[,]" and "consists of a numerical sequence of files, called FBI 'classifications,' which are organized according to designated subject categories."  (*Id*. ¶¶ 18–19.)  These "categories include types of criminal conduct and investigations conducted by the FBI[.]"  (*Id*. ¶ 19.)

The FBI maintains general indices for the records that CRS contains.  (*See id.* ¶ 20.)  These indices "are arranged in alphabetical order and comprise an index on a variety of subject matters[,]" such as individuals, organizations, and subjects of

3

investigative interest.  (*Id.*)  Entries fall into two categories: (1) main entries, which "pertain[] . . . to the main subject(s) of a file" and typically bear the name of the individual, organization, or event, and (2) reference entries (or cross-references), which pertain to documents that mention an individual, organization, or event, but are located in a main file that relates to another entity or topic.  (*Id.*)  The FBI also maintains a Universal Index ("UNI"), which "is the automated index of the CRS[,] and provides all offices of the FBI with a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching."  (*Id.* ¶ 23.)  Within UNI, an individual's name may be linked to "identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event."  (*Id.*)

In 1995, the FBI implemented the Automatic Case Support ("ACS") system, which converted "over 105 million CRS records . . . into a single, consolidated case management system accessible by all FBI offices."  (*Id.* ¶ 22.)  The ACS "built upon and incorporated prior automatic FBI indices[,]" such that "a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS."  (*Id.* ¶ 23.)  Thus, "a UNI index search in ACS is capable of locating FBI records created before its . . . implementation [in 1995] to the present day in both paper and electronic format."  (*Id.*)

Then, in 2012, the FBI implemented Sentinel, its next generation case management system.  (*See id.* ¶ 24.)  Sentinel "provides a web-based interface . . . and . . . includes the same automated applications that are utilized in ACS."  (*Id.*)  Although Sentinel houses FBI records and case files created after July 1, 2012,

4

"Sentinel did not replace ACS and its relevance as an important FBI search mechanism." (*Id.*)  New Sentinel records are "indexed for future retrieval[,]" and "there is an index data sharing nexus between the Sentinel and ACS systems" such that "information indexed into Sentinel [is] also replicated or 'backfilled' into ACS." (*Id.*)

Given all of these indices and record systems, when the FBI receives a request for records under the FOIA, it "employs an index search methodology" that is "reasonably expected to locate responsive material within the vast CRS [system.]" (*Id.* ¶ 25.)  To conduct a search of the CRS, the FBI uses "the automated UNI application of ACS[.]" (*Id.*)  In addition, if a request seeks records that were generated after July 1, 2012, the FBI will separately perform a Sentinel index search. (*See id.*)

### B.     Facts And Procedural History

Hedrick is currently incarcerated as a result of being convicted of distribution of child pornography and other related offenses in the Southern District of Texas in 2013. (*See id.* ¶ 6.)  *See also United States v. Hedrick*, 583 F. App'x 364, 365 (5th Cir. 2014) (per curiam) (affirming convictions on distributing child pornography), *cert. denied*, 136 S. Ct. 1396 (2016).  According to the FBI's memorandum of law in support of its motion for summary judgment, there is a "complete lack of FBI records related to these convictions," which in the agency's view means that "the criminal investigation[s] of these charges were most likely related to a local, state, or federal task force investigation of some type, which did not include or involve the FBI." (Def.'s Mem. at 2 n.1.)

In August of 2013, Hedrick submitted two separate FOIA requests to two FBI units: one to the Brownsville Resident Agency of the Texas FBI Field Office, and the other to FBI Headquarters in Washington, D.C.  (*See* Hardy Decl. ¶¶ 7–8.)  The two

5

requests "are separate, but very similar 16 part inquir[i]es" (*id.* ¶ 3 n.1) that seek information about Hedrick himself, his criminal prosecution in the Southern District of Texas, and his contact with the FBI regarding his knowledge of an alleged smuggling conspiracy. (*See* FOIA Requests, Exs. A & B to Compl., ECF No. 1-1, at 2–6.)[3]

"The FBI combined [the] plaintiff's [two FOIA] request letters into a single administrative case[,]" and assigned the matter Request Number 1228440-000. (Hardy Decl. ¶ 9 n.3.) Then, "the FBI conducted a CRS index search on October 3, 2013, for responsive main file records employing the UNI application of ACS[,]" using variations of [Hedrick's] name, his date of birth, Social Security Number, and place of birth, but the search yielded "no main files responsive to the subject of plaintiff's request." (*Id.* ¶ 26.) When Hedrick was informed of this result, he undertook a series of administrative appeals, and on April 29, 2015, filed a pro se complaint in this Court. Each of the complaint's four counts, which are brought under the FOIA and the Privacy Act, 5 U.S.C. § 552a, essentially asserts that "[t]he FBI failed to identify records known to be in its possession." (Compl. at 3; *see also id.* at 3–10.)[4] The complaint also

---

[3] Hedrick maintains that, during the course of his prosecution in the Southern District of Texas, he informed law enforcement officials about an alleged conspiracy to smuggle plutonium into the United States through a TSA Certified Cargo Screening Facility at which Hedrick worked. (*See* Pl.'s Opp'n at 6.) The judge purportedly ordered the government "to transmit the national security allegations raised by Hedrick . . . to the appropriate investigative authority of the United States." (*Id.* at 4.) Hedrick believes the FBI was that investigative authority (*see id.*), and he asserts that "[i]f the FBI did not receive . . . this court order . . . then [the prosecutors] are in 'criminal contempt of court' for failing to comply with a Federal court order pertaining to the national security of the United States" (*id.*).

[4] There is no dispute that the records that Hedrick seeks are contained in the FBI's CRS system, which is exempt from the Privacy Act. *See* 5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.96(a)(1). Accordingly, the FBI properly processed Hedrick's request as one submitted solely under the FOIA and invoked exemptions under that statute. (*See* Hardy Decl. ¶ 34 (explaining that the FBI determined that "the Privacy Act does not provide plaintiff an avenue for accessing" the records he requested, and instead the agency "process[ed] the records under the FOIA to achieve maximum disclosure").)

requests "an order to compel [the FBI] to provide [Hedrick with] all of the documents and items requested by [him] in his FOIA [R]equest No. 1228440-0." (*Id*. at 11.)

After Hedrick filed his complaint, the FBI conducted a second search "for both main file and cross-references" (Hardy Decl. ¶ 27), which still "did not identify any main file records indexed to the plaintiff" (*id.*). However, this second search yielded a "responsive cross-reference control file number 804B-SA-C57921-H, Serial 123." (*Id.*)[5] That control file contained a two-page Interview Form (hereinafter "Form 302") that, according to the FBI, had been "compiled as a result of an interview by FBI Special Agents of [Hedrick] at his Brownsville, Texas, Pan American Airways, Inc., office on March 28, 2011." (*Id.* ¶ 5, *see also id.* ¶ 29.) On August 12, 2015, the FBI released Form 302 to Hedrick after redacting certain personal identifying information pursuant to FOIA Exemptions 6 and 7(C). (*See id.* ¶ 35.) The FBI did not locate any additional documents in this control file that were responsive to Hedrick's FOIA requests. (*See id.* ¶ 29; *see also id.* ¶ 6 (stating that, with respect to Hedrick's prosecution in the Southern District of Texas, "[n]o FBI investigative records were compiled in relationship to these criminal investigations and convictions").)

Shortly thereafter, on September 14, 2015, Hedrick filed an "Amended Complaint" that added a fifth count to his existing complaint. (*See* Am. Compl., ECF No. 12.) In the additional count, Hedrick alleges that "[t]he agents and employees of the Federal Bureau of Investigation (FBI) have acted negligently, improperly or

---

[5] A control file "is a repository of potential investigative leads of alleged federal criminal violations that may or may not lead to the opening of a preliminary or full investigation" (Hardy Decl. ¶ 29.) It is distinct from a main investigative case file, "which contains records generated in the course of a specific investigation[.]" (*Id.* ¶ 29.) The documents in a control file do not necessarily pertain to one person or case. (*See id.*)

7

criminally" (*id.* at 1) because Form 302 is "fabricated" and "false" (*id.* ¶ 3). Hedrick also faults the FBI for not claiming a FOIA exemption as the basis for withholding the entire control file in which Form 302 was located and, instead, claiming an exemption only for "related names." (*Id.* ¶ 2.) As relief, Hedrick requests that this Court order the FBI to produce a copy of the entire control file so that he can "review the contents and context surrounding the 'illegal' insertion of a 'fraudulent'" document into the file. (*Id.* ¶ 12.)

On September 19, 2015, the FBI moved for summary judgment with respect to Hedrick's complaint, arguing that the agency had conducted an adequate search for records, had properly invoked FOIA Exemptions 6 and 7(C) to withhold personal identifying information, and had produced all "reasonably segregable" portions of the responsive records. (*See* Def.'s Mem. at 26–34.) Attached to the FBI's motion is the declaration of David M. Hardy, the Section Chief of the Record/Information Dissemination Section of the FBI's Records Management Division. (*See* Hardy Decl. ¶ 1.) Hardy explains that, "[g]iven the nature of [Hedrick's] request seeking specific records relating to, or pertaining to, himself, and the comprehensive nature of the information contained in the CRS . . . , the CRS is the only FBI system of records where responsive records would reasonably be found." (*Id*. ¶ 30.) Moreover, according to Hardy, the two-page document released to Hedrick is "an FBI '302' Interview Form" that involved an interview of Hedrick that FBI officers conducted (*id*. ¶ 29), and that the agency's search of the file "did not locate any additional documents . . . that were responsive to [Hedrick's FOIA] request" (*id.*).

In his opposition, which was filed on December 8, 2015, Hedrick argues that the FBI did not conduct an adequate search for records because it did not search specific field offices (*see* Pl.'s Opp'n at 8), and that the agency is intentionally suppressing additional responsive records related to an alleged smuggling conspiracy (*see id.* at 7–8; *see also supra* note 3). Hedrick further insists that the Form 302 document is "false" and that an unknown person "planted" the document in the control file in order "to obstruct justice[.]" (Pl.'s Opp'n at 8.) Hedrick's opposition brief asks this Court to order the FBI to produce the entire control file in which it located Form 302 and initiate criminal proceedings against those people who allegedly inserted the "false" document into the file. (*See id.* at 13, 17.)

The FBI's motion for summary judgment is now fully briefed (*see* Def.'s Reply; Pl.'s Resp. to Def.'s Reply in Supp. of Def.'s Mot. for Partial Summ. J., ECF No. 32), and thus, that motion is ripe for this Court's consideration.

## II.   LEGAL STANDARDS

### A.   Summary Judgment In FOIA Cases Generally

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[ ] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch v. Navy*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In

9

the FOIA context, a district court conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). Because the court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), it is appropriate to enter summary judgment for an agency only if the agency proves that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

### B. Adequacy Of An Agency's Search For Records

When moving for summary judgment regarding the adequacy of its search for records in response to a FOIA request, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27 (D.C. Cir. 1998) (noting that a court assesses the adequacy of a federal agency's search for responsive records by applying a reasonableness test). Significantly for present purposes, "[t]he adequacy of a FOIA search is generally determined by the appropriateness of the methods used to carry out the search, and not by the actual search results." *Bigwood v. U.S. Dep't of Defense,* 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (citing *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003)). When evaluating the appropriateness of an agency's method of searching, courts have concluded that the agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested."

*Oglesby,* 920 F.2d at 68.  However, the agency's search for records need only be reasonable and need not be exhaustive.  *Id.*  "The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents." *Bigwood*, 132 F. Supp. 3d at 135; *see also Iturralde,* 315 F.3d at 315.

In this context, a federal agency can demonstrate that its search for responsive records was reasonable by appending to its motion "reasonably detailed" affidavits or declarations that describe the search it performed.  *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98 (D.D.C. 2013) (quoting *Schoenman v. FBI,* 764 F. Supp. 2d 40, 45 (D.D.C. 2011)).  In compliance with the reasonableness standard, these affidavits "must . . . set [ ] forth the search terms and the type of search performed, and aver [ ] that all files likely to contain responsive materials (if such records exist) were searched." *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995).  The agency's evidence in this regard is entitled to a presumption of good faith, *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 55 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015), and once the agency presents such evidence, the burden shifts to the plaintiff to provide evidence that is sufficient to raise "substantial doubt" about the adequacy of the agency's search, *Iturralde,* 315 F.3d at 314 (quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).  At the end of the day, it is well established that a court may award summary judgment based solely upon the information provided in the government's affidavits, "if the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### C. An Agency's Obligation To Disclose Reasonably Segregable Information

The FOIA also requires that, notwithstanding its duty to locate and produce responsive records, or its right to withhold certain information in response to a FOIA request, the government must provide "[a]ny reasonably segregable portion of a record . . . to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see also Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013). "'[I]t has long been the rule in this Circuit that non-exempt portions of a [responsive] document must be disclosed unless they are inextricably intertwined with exempt portions.'" *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

"The government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents" and "must provide[ ] a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Barouch v. DOJ*, 962 F. Supp. 2d 30, 56 (D.D.C. 2013) (alteration in original) (internal quotation marks and citations omitted).

### D. Application Of Summary Judgment Rules To Pro Se Parties

Finally, because Hedrick is proceeding in this matter pro se, this Court must be careful when applying the legal framework discussed above to evaluate the FBI's motion for summary judgment in the instant matter. The Supreme Court has held that the filings of pro se parties are to be "liberally construed[,]" and that "however inartfully pleaded," pro se filings "must be held to less stringent standards than formal [documents] drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (emphasis in original) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

Nevertheless, it is also clear "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). Thus, when faced with a motion for summary judgment, even a pro se plaintiff must comply with the Federal Rules of Civil Procedure and this Court's local rules, *see Slovinec v. Am. Univ.*, 520 F. Supp. 2d 107, 111 (D.D.C. 2007), including this Court's rules regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief, *U.S. Bank Nat'l Ass'n v. Poblete*, 15cv312, 2016 WL 1089217, at *1 n.2 (D.D.C. Mar. 18, 2016) (deeming admitted a defendant's statement of undisputed facts where, in contravention of local rules and a court order, the pro se plaintiff failed to respond to the statement of facts).

### III. ANALYSIS

Hedrick challenges the FBI's searches for responsive records on primarily two grounds: he says that the FBI did not search in all appropriate locations (Pl.'s Opp'n at

8), and he argues that the FBI did not locate additional records that he believes exist (*see id.* at 7). Hedrick's arguments are insufficient to overcome the FBI's motion for summary judgment, for the reasons explained below. Likewise, Hedrick's bald supposition "that the two (2) pages released by Hardy are false documents which appear to have been intentionally inserted into an active FBI file to defraud the investigators[]" (*id.*) does not rebut the presumption of good faith that this Court must afford to the representations in the government's declaration.

    **A.**    **The FBI Conducted An Adequate Search For Responsive Records**

        1.    <u>The Hardy Declaration Establishes That the FBI's Search Was Reasonably Calculated To Locate Responsive Documents</u>

Hedrick's argument that the FBI's search for documents was inadequate because the agency did not search the files that are maintained in various FBI field offices in Texas, California, and the District of Columbia easily fails. (*See id.* at 8, 13; Compl. at 3.) As explained above, the only issue that arises when evaluating the adequacy of a FOIA search is whether the agency used appropriate methods to carry out the search, regardless of the *results* of that search. *See Iturralde*, 315 F.3d at 315. In his declaration, Hardy explains that all investigative records that FBI Special Agents and employees create are indexed into the CRS, or, if the records were created after July 1, 2012, are indexed into Sentinel, without regard to the location of creation. (Hardy Decl. ¶ 30.) Thus, this Court is persuaded that the FBI's index searches of the CRS using variations of Hedrick's name and identifying information about him were reasonably calculated to locate any information indexed to Hedrick, and in fact, actually encompassed the locations that Hedrick says were not searched. Therefore, the FBI's search was adequate. *See, e.g.*, *Smith v. FBI*, 448 F. Supp. 2d 216, 221 (D.D.C. 2006)

14

(concluding that the FBI's search of the CRS using FOIA requesters name, date of birth, and social security number was adequate); *Lardner v. FBI*, 852 F. Supp. 2d 127, 134–35 (D.D.C. 2012) (finding that the government's declaration established that the FBI had conducted an adequate search for records responsive to FOIA request, and that plaintiff had failed "to provide the Court with any convincing evidence that rebuts the defendants' assertion that all [files at issue] were searched through the CRS search").

> 2. Hedrick Cannot Challenge The Adequacy Of The FBI's Search Based On Speculation That The Agency Is Hiding Or Has Destroyed Records

Hedrick's insistence that the FBI *must* have additional, undisclosed records pertaining to him because of his prior relationship to the agency as "a consultant and an informant for the FBI-South Texas Corruption Task Force" (Compl. at 4; *see id*. at 9) is of no moment.[6] Even if the judge in Hedrick's criminal trial ordered the prosecutor to refer Hedrick's "national security allegations" to the FBI for further investigation (Pl.'s Opp'n at 4), and even if the FBI subsequently conducted "a 'specific investigation' of a potential threat" to national security as a result of Hedrick's information (*id*. at 6), the fact that no records concerning that matter were located in response to Hedrick's FOIA request is not a valid basis upon which to conclude that the FBI's search for records was inadequate. This is because "it is well-established that 'the presumption of good faith' that accompanies agency affidavits submitted in the Privacy Act or FOIA context

---

[6] As noted above, Hedrick purportedly reported to the prosecutor in his child pornography case that nuclear materials were brought into the United States through the cargo screening facility he operated, and that the person responsible fled the United States before he could be arrested. (*See* Pl.'s Opp'n at 5-6; *see also supra* n.3.) Hedrick thinks it is obvious that records were generated as a result of his report; he argues that "[i]f this court is to 'believe' that no records [about these events] . . . exist anywhere in the FBI system of records after [the plaintiff] met on 5 different dates, at 3 different locations, with 6 FBI agents and 1 CIA operations officer concerning a nuclear bomb smuggled into the U.S. through [his] TSA-CCSF[,] then we might as well believe in the Easter Bunny and Santa Claus[.]" (*Id*. at 6.)

'cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Williams v. Fanning*, 63 F. Supp. 3d 88, 94–95 (D.D.C. 2014) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *see also Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search.") (internal quotation marks and citations omitted); *Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 16 (D.D.C. 2011) ("[O]pinion and speculation as to the existence or wrongful destruction of responsive records are not relevant considerations in this FOIA action."). And Hedrick has provided nothing beyond speculation that additional documents exist or were destroyed. Thus, his contentions are manifestly insufficient to rebut the government's declaration on summary judgment. *See Donoghue v. Office of Info. Policy, U.S. Dep't of Justice*, 157 F. Supp. 3d 21, 28–29 (D.D.C. 2016) (finding that plaintiff's "unsupported speculation does not overcome the defendants' showing that its manual and automated searc[hes] of the CRS using variations of the plaintiff's name as search terms were reasonably calculated to locate responsive records"); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) ("Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents.").

Hedrick's added assertion that the one responsive document that the FBI did produce—the two-page Form 302—was a forgery adds nothing to the adequate search analysis.

Hedrick provides no *evidence* to support his contention that "the FBI files have been 'cleaned' to protect the 'numerous' highly placed individuals [whom he has] accused of crimes including aiding and abetting a terrorist to escape the United States[.]" (Pl.'s Opp'n at 5.) Moreoever, he cites no authority for the proposition that, when challenged, an agency must authenticate or prove the veracity of the content of a responsive record. *See DiViaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) ("[N]othing in the [FOIA] requires 'answers to interrogatories' but rather and only disclosure of documentary matters which are not exempt[.]"). Indeed, it is well established that "questions about the authenticity and correctness of the released records are beyond the scope of the Court's FOIA jurisdiction." *Jackman v. Dep't of Justice*, No. 05-1889, 2006 WL 2598054, at *2 (D.D.C. Sept. 11, 2006).

In short, this Court finds that the FBI has satisfied its burden of demonstrating that the agency has conducted a reasonable search for records in response to Hedrick's FOIA request, and that nothing that Hedrick has offered in opposition to the government's motion is sufficient to undermine the government's summary judgment showing.

### B. The FBI Has Established That It Released To Hedrick All Reasonably Segregable, Responsive Information

In a similar vein, the FBI has also satisfied its obligation of establishing that all reasonably segregable, responsive information has been released to Hedrick. Hardy explains in his declaration that the agency partly released Form 302 "with redactions pursuant to the specific FOIA exemptions identified" above. (Hardy Decl. ¶ 51.) He avers that "[t]hese pages comprise a mixture of material that could be segregated for release and material that was withheld because release would trigger foreseeable harm

17

to one or more interests protected by the cited FOIA exemptions[.]" *Id*. Hedrick does not specifically contest the agency's segregability determination for this document, and based on its own review of the FBI's supporting declaration, the redacted copy of Form 302, and the nature of the limited redactions, this Court concludes that the FBI has released all reasonably segregable information, and therefore is entitled to summary judgment.

## IV.   CONCLUSION

The FBI has established that its searches for records responsive to Hedrick's FOIA request were reasonable, and that is has released all reasonably segregable information that is responsive to Hedrick's FOIA requests.  Furthermore, the law in this Circuit is clear that supposition regarding the existence of additional documents—which is all that Hedrick offers—is insufficient to overcome the presumption of good faith that attaches to the government's declaration that otherwise supports the agency's motion for summary judgment.

Accordingly, and as reflected in this Court's prior order, the FBI's motion for summary judgment has been **GRANTED**, Hedrick's motion to sever, motion to compel preservation of records, and motion to preserve evidence have been **DENIED** as moot, and **JUDGMENT** has been entered in favor of the FBI.

DATE:  October 24, 2016                             *Ketanji Brown Jackson*
                                                    KETANJI BROWN JACKSON
                                                    United States District Judge